UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __03/09/2020__

DOINA ROSU ALMAZON,  :
                     :
          Plaintiff, :          19-CV-4871 (VEC)
                     :
     -against-       :
                     :          MEMORANDUM
JPMORGAN CHASE BANK, National  :   OPINION AND ORDER
Association,         :
                     :
          Defendant. :
--------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiff Doina Almazon has spent the past seven years fighting, in state court, to prevent

JPMorgan Chase Bank, N.A. (Chase) from foreclosing on her home at 27 Grape Lane in

Hicksville, New York (the Property). Notwithstanding her vigorous efforts, the New York

Supreme Court, Nassau County (Nassau County Supreme Court) issued a foreclosure judgment

(the Judgment) on December 14, 2018. Dkt. 8-22. Thereafter, Plaintiff filed an appeal, followed

by a motion to the trial court to reconsider its underlying summary judgment decision and an

emergency application for a temporary restraining order (TRO) against any foreclosure sale of

the Property. Dkts. 8-20 to 8-23. On August 29, 2019, the trial court denied her reconsideration

and TRO motions; her appeals remain pending in state court. Dkt. 42-5.

Plaintiff filed this action while her motions for reconsideration were pending in state

court, seeking to re-litigate many of the issues that she unsuccessfully raised in the foreclosure

proceeding. The Complaint (Dkt. 1), filed *pro se*, alleges ten causes of action and seeks damages

for Chase's alleged foreclosure-related misconduct, as well as a declaration that the bank has no

"title, lien, or interest in or to" the Property. Compl. at 18.

Defendant moved to dismiss the Complaint in its entirety for lack of subject matter jurisdiction, or, in the alternative, for failure to state a claim upon which relief can be granted. Dkt. 7. In her opposition memorandum ("Opp. Mem.")—filed by an attorney temporarily engaged for that purpose—Almazon withdrew four of the ten claims, leaving for disposition her federal claims under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.* and the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* and her state law claims for intentional infliction of emotional distress (IIED), breach of the implied covenant of good faith and fair dealing, conversion, and deceptive business practices in violation of N.Y. Gen. Bus. Law (GBL) § 349. *See* Opp. Mem. (Dkt. 22) at 14 n.11. Thereafter, Plaintiff filed a proposed Amended Complaint (Dkt. 34-1), augmenting her factual allegations, converting her RESPA claim into a damages claim for "dual tracking," and adding a new claim, pursuant to 42 U.S.C. § 1983, which alleges that Chase deprived her of procedural due process during the state court proceedings.

For the reasons that follow, Plaintiff's claims for declaratory relief are dismissed for lack of subject-matter jurisdiction; her damages claims are dismissed because they are barred by *res judicata*. Leave to amend is denied as futile because her proposed amended claims are similarly defective and fail to state claims upon which relief can be granted.

## I.    BACKGROUND

### A.  Facts Alleged in Plaintiff's Complaint[1]

On or about December 21, 2000, Plaintiff executed a mortgage on the Property in favor of Flagstar Bank to secure a loan of $232,000.  Compl. ¶¶ 1, 3[2]; *see also* Declaration of Boris Peyzner (Peyzner Decl.) (Dkt. 8) Ex. A at 17-27.[3]  A few years later,  Almazon executed a second mortgage to Chase in the amount of $54,366.51.  Compl. ¶ 6; Peyzner Decl. Ex. A at 34-52.  The two mortgages were ultimately consolidated into a single mortgage in favor of Chase, in the amount of $275,650 (Consolidation, Extension, and Modification Agreement or "CEMA").  Compl. ¶¶ 5-7; Peyzner Decl. Ex. A at 54-79.

Sometime in late 2010, Plaintiff petitioned Chase for a modification to the CEMA; she was experiencing "severe financial hardship" and qualified for a federal loan modification program known as the Home Affordable Modification Program (HAMP).  Compl. ¶¶ 9, 11.  According to Almazon, however, Chase never initiated the "internal steps necessary" for her to be approved for relief under that program.  *Id*. ¶ 11.  During the pendency of her request for a HAMP modification, Plaintiff attempted to make partial payments on her mortgage, but Chase

---

[1]      The facts are taken from Plaintiff's Complaint; all non-conclusory, factual allegations are accepted as true for purposes of this motion, unless they are contradicted by other allegations, attached exhibits, or documentary evidence integral to the Complaint.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

[2]      The Complaint contains two sets of paragraphs 1-6: the first, on page 2, under "Basis for Jurisdiction," and the second, on pages 3-4, under "Statement of Claim."  Unless otherwise stated, references to paragraphs in the Complaint refer to Plaintiff's Statement of Claim.  Compl. at 3-17.

[3]      The Court may consider Plaintiff's publicly recorded mortgage documents in connection with Defendant's motion because Plaintiff explicitly references them in her Complaint, they are integral to her claims, and she raises no objections to their relevance or authenticity.  *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018).  Further, "[i]n deciding a motion to dismiss under Rule 12(b)(6), a court can take judicial notice of court documents." *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 502 n.1 (S.D.N.Y. 2016) (collecting cases).  The Court therefore takes judicial notice of the existence and content of the relevant records of the New York State courts, many of which have been placed before this Court by the parties, *see* Peyzner Decl. Exs. A-Q; Declaration of Padmaja Chinta (Chinta Decl.) (Dkt. 24) Exs. 8-14, 16-17, 20-23, 26-29; Letter from Padmaja Chinta dated Dec. 16, 2019 (Chinta Letter) (Dkt. 40) Ex. B; Letter from Scott W. Parker dated Dec. 16, 2019 (Parker Letter) (Dkts. 41-42) Exs. A-G; Declaration of Mark S. Winter (Winter Decl.) (Dkt. 54) Exs. A-D; Declaration of Richard D. Femano (Femano Decl.) (Dkt. 56) Exs. A-I.

rejected those payments, "thereby creating further delinquency and negatively impacting her credit and account status." *Id*. ¶ 10.

Despite Almazon's reported requests to "modify the loan for the CEMA," Chase allegedly failed to provide her with "guidance letters as typically required under both Federal and State Law," made "contradictory and misleading statements," gave her "only partial information despite repeated requests for formal documentation," lost her modification paperwork sixteen times, and failed to explain "the workings of any modified loan transaction." *Id*. ¶¶ 19-21. According to Plaintiff, Chase "knowingly and intentionally" made "it impossible for Plaintiff to successfully negotiate terms for a successful loan transaction and modification" and did so "with the explicit purpose . . . of taking possession of Plaintiff's Property." *Id*. ¶¶ 31-32.

On October 29, 2012, Hurricane Sandy[4] "severely damaged" the Property, forcing Plaintiff to live elsewhere and making it "impossible" for her to "pay her mortgage without modification." Compl. ¶¶ 14-15. As a result of the storm damage to her property, Plaintiff was entitled to receive from some unspecified source more than $94,000; those funds were held by Chase during the repair process. *Id*. ¶¶ 16-17. According to Plaintiff, Chase wrongfully refused to release those funds to her. *Id*. ¶¶ 17-18.

On January 15, 2013, acting through the law firm of Fein, Such & Crane, LLP (the Firm), Chase initiated foreclosure on the property by filing a summons, complaint, and notice of pendency (also known as a *lis pendens*) in the Nassau County Supreme Court (the Foreclosure

---

[4] Although the storm that hit New York City in October 2013 is frequently called a hurricane, according to the National Hurricane Center, by the time it hit New York, the storm was no longer a hurricane. *See* National Hurricane Center, *Tropical Cyclone Report Hurricane Sandy* 1 (Feb. 12, 2013) ("Sandy . . . then made landfall as a post-tropical cyclone near Brigantine, New Jersey with 70-kt maximum sustained winds."), *available at* https://www.nhc.noaa.gov/data/tcr/AL182012_Sandy.pdf. Regardless of its technical classification, it was a very large storm. Because Plaintiff refers to it as Hurricane Sandy, this opinion will adopt that nomenclature.

Action).[5]  Compl. ¶¶ 25-26; Peyzner Decl. Ex. A at 2 (summons); *id*. at 6 (state court complaint);

Peyzner Decl. Ex. D at 52 (notice of pendency).  According to Plaintiff, the Firm filed the

litigation without first providing her with various disclosures allegedly required by state and

Federal law.  Compl. ¶¶ 27-28.  Plaintiff also complains that Chase wrongfully commenced the

Foreclosure Action while her request for a loan modification was pending.  *Id*. ¶ 13.

At some point after the Foreclosure Action was filed, Chase engaged the services of

Safeguard Properties, LLC (Safeguard).  *Id*. ¶ 13.  In or about April 2018, Safeguard entered the

Property, changed the locks, and removed Plaintiff's shed, destroying it and its contents.  *Id*. ¶¶

13, 22.

## B.  Procedural History

### 1.    The Foreclosure Action

Many of the claims that Plaintiff raises in this Court were first raised in the Foreclosure

Action.  Peyzner Decl. Ex. B (State Court Answer).  In her answer and counterclaim (filed by

counsel), Almazon interposed eighteen affirmative defenses, including:

> Alleging that Chase intentionally lost her application for a HAMP
> modification and otherwise failed to "fairly and reasonably"
> consider her modification efforts before initiating the Foreclosure
> Action, State Ct. Ans. ¶¶ 23-33;
>
> Alleging that Chase "promised" her a modification, but instead
> "misled" her, lost her documents, failed to finalize and sign an
> agreement that it presented to her, and otherwise "frustrated [her]
> efforts in obtaining a real modification," *id*. ¶¶ 34-43;
>
> Alleging that Chase failed to provide the disclosures required by
> RESPA and TILA during the original mortgage application and
> CEMA process, *id*. ¶¶ 54-64;
>
> Alleging that she attempted to make partial payments towards her
> mortgage but that Chase refused to accept them, thereby causing

---

[5]      A *lis pendens* provides notice to a potential purchaser that an action is pending that could affect title to the
property.  N.Y. C.P.L.R. § 6501.

late fees and charges to accrue and forcing Almazon into default so that the bank could file a "wrongful and unnecessary foreclosure action," *id.* ¶¶ 69-73;

Alleging that Chase violated HAMP by initiating a foreclosure action while she was "actively seeking a modification," *id.* ¶¶ 74-77; and

Alleging that Chase failed to give her the 90-day notice required by state law and related disclosures before filing its summons and complaint. *Id.* ¶¶ 84-92.

In addition, Almazon asserted six counterclaims, including: for "false implied promise of a modification," *id.* ¶¶ 116-22; for "misleading representations by [Chase] to obtain partial payments," *id.* ¶¶ 123-25; for improperly commencing the Foreclosure Action "during active modification negotiations," *id.* ¶¶ 126-29; and for violation of GBL § 349. *Id.* ¶¶ 136-37. Plaintiff also repeatedly complained that Chase was unlawfully withholding Hurricane Sandy funds. *See*, *e.g.*, Peyzner Decl. Ex. D (Dkts. 8-6 at 115-17) (affidavit in support of request for TRO); Peyzner Decl. Ex. P at 5 (affidavit in support of reconsideration motion).

From November 27, 2013, through March 2017, the parties engaged in efforts to settle, in addition to litigating Almazon's unsuccessful requests for a stay and a TRO. *See* Peyzner Decl. Ex. D (Dkt. 8-6 at 113, 146-53); Chinta Decl. Ex. 21, ¶ 8. On June 15, 2017, Chase moved for summary judgment. Peyzner Decl. Ex. D (Dkt. 8-5 at 5-6). Its moving papers noted that Almazon had made no loan payments since February 1, 2010. Peyzner Decl. Ex. D (Dkt. 8-5 at 11) ¶ 13. Chase asserted that it had provided all required pre-litigation warnings and notices, and addressed and controverted each of Plaintiff's defenses and counterclaims. *Id.* ¶¶ 58-155. On September 18, 2017, after Plaintiff failed to oppose the motion, Justice Adams granted summary judgment in Chase's favor; struck Almazon's answer; dismissed her affirmative defenses and counterclaims with prejudice; and issued an Order of Reference appointing a referee to "ascertain and compute the amount due." Peyzner Decl. Exs. E-F.

Plaintiff appealed to the Appellate Division, Second Department. Peyzner Decl. Ex. H. Because Plaintiff had defaulted in the trial court, Chase moved to dismiss the appeal.[6] Almazon failed to oppose Chase's motion. Peyzner Decl. Ex. I. The Appellate Division dismissed the appeal, and the Court of Appeals denied leave to appeal on November 27, 2018. Peyzner Decl. Exs. J, L.

While the appeals process was proceeding, Chase moved to confirm the referee's report and for a judgment of foreclosure. Peyzner Decl. Ex. M at 18. Almazon opposed the motion on the grounds that (i) she was not timely served with the underlying motion for summary judgment; (ii) although she ultimately received the moving papers by email, she did not have enough time to prepare an opposition; (iii) Chase caused damage to a shed on the Property; (iv) Chase did not negotiate a settlement in good faith, and (v) the statute of limitations on the foreclosure claim had run.[7]

On December 14, 2018, Justice Adams granted Chase's motion. Peyzner Decl. Ex. P at 29-30. In his Memorandum Decision, Justice Adams expressly rejected Almazon's argument that she had not been served with the summary judgment motion papers, concluding that her claim was "refuted by an affidavit of service stating that the motion papers were served on

---

[6] Pursuant to N.Y. C.P.L.R. § 5511, the losing party may not appeal an order entered upon the default of the losing party.

[7] The state court and the parties appear to have viewed a proposed Order to Show Cause (OSC) that Almazon filed on July 5, 2018, as her opposition to Chase's motion. In her proposed OSC, Almazon sought a TRO to stop any foreclosure sale and requested that the court "dismiss [the] entire case" for multiple reasons, including (i) that the Firm "did not send me a copy" of the bank's summary judgment motion papers; (ii) that it later "emailed me 500 pages" but "refuse[d] to allow me to put in an Answer"; (iii) that Chase "caused my shed to be removed and all items inside damaged or missing"; (iv) that Chase engaged in "harassment" in an effort to "force me" to "accept a settlement"; and (v) that the statute of limitations had expired. *See* Parker Letter Ex. B at 3-4. The OSC was declined by a justice of the Nassau County Supreme Court the following day. *Id.* at 4. On August 9, 2018, Chase filed a reply affidavit in further support of its motion to confirm the referee's report that responded to each of Plaintiff's points. Chinta Decl. Ex. 21, ¶¶ 15-22. Chase also submitted a copy of its affidavit of service, dated June 15, 2017, attesting that on that date it had served its summary judgment papers on Plaintiff by Federal Express. *Chinta Decl.* Ex. 21, Ex. D thereto.

[Almazon] on June 15, 2017 by Federal Express at her current address" and by Plaintiff's admission that she received an emailed copy of the motion. *Id*. at 29. That same day, the state court issued its Order Confirming Referee Report and Judgment of Foreclosure and Sale, Peyzner Decl. Ex. M at 5-13. The court determined that the amount due on the mortgage was $369,879.02 and directed the Property to be sold at public auction within 90 days or as soon thereafter as reasonably practicable. *Id*. at 9.

Plaintiff appealed, Peyzner Decl. Ex. N, and asked the Second Department for a stay of the foreclosure sale pending her appeal. The appellate court denied the request for a stay. *See* Decision and Order, *JPMorgan Chase Bank, N.A. v. Almazon*, No. 2019-02456 (2d Dep't Apr. 9, 2019). Insofar as the record in this action discloses, that appeal is still pending before the Second Department.

On both March 9 and April 2, 2019, Plaintiff filed a "Re-Argument Motion for Reconsideration," seeking reconsideration of the September 18, 2017, summary judgment order underlying the Judgment. Peyzner Decl. Exs. O, P. Plaintiff again argued that she had not received notice of Chase's motion for summary judgment and therefore had no opportunity to be heard. Peyzner Decl. Exs. P at 4, O at 2. In addition, she sought reconsideration on various grounds previously alleged in her defenses and counterclaims, adding that Chase hired Safeguard to unlawfully trespass on the Property and damage her possessions and that it refused to release repair proceeds from her Sandy "payout." Peyzner Decl. Ex. P at 4-5. Almazon argued that the bank's foreclosure complaint, as well as the Judgment, should be "dismissed in its entirety due to such Unethical and Illegal Conduct." *Id*. at 5.

On May 22, 2019—with her motions for reconsideration pending and undecided— Plaintiff once again moved by OSC for a TRO staying the foreclosure sale of the Property,

Peyzner Decl. Ex. Q, arguing that the sale could not go forward until her motions for reconsideration were "fully adjudicated." *Id*. at 8-9. In addition, she advised the state court that she was about to file a lawsuit in federal court that would include some of the same causes of action that were in her Answer and Counterclaim. *Id*. at 9, ¶ E.

The Nassau County Supreme Court entered a TRO in May 2019, temporarily staying the foreclosure sale until her pending motions were decided. Peyzner Decl. Ex. Q at 4. That relief was short lived, as the Nassau County Supreme Court denied Almazon's motions for reconsideration and for a further stay of foreclosure on August 29, 2019. Parker Letter Ex. F. The foreclosure sale of the Property was rescheduled for December 17, 2019. Parker Letter Ex. G. Almazon again appealed to the Appellate Division, Second Department. Winter Decl. (Dkt. 54) Ex. A. That appeal, along with Almazon's previous appeal of the judgment of foreclosure, remains pending.[8]

### 2. The Pending Action in this Court

Plaintiff filed her Complaint in this action on May 24, 2019, *pro se*. She asserted ten causes of action, including many of the claims previously raised as affirmative defenses or counterclaims in state court.[9] On June 26, 2019, Chase moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), characterizing Plaintiff's newly-filed claims as an "improper collateral attack on the Foreclosure Action." Def. Mem. (Dkt. 7-1) at 4. Chase argued that this

---

[8]    On December 17, 2019, Plaintiff filed a petition pursuant to Chapter 13 of the United States Bankruptcy Code in the Eastern District of New York; that petition has now been dismissed because Almazon failed to submit required documents. *See* Notice of Automatic Dismissal, *In re Almazon*, No. 8-19-78516 (Bankr. E.D.N.Y. Feb. 21, 2020), Dkt. 20.

[9]    The causes of action that have not been withdrawn are: her Second, Third and Fourth Causes of Action, which assert state law claims for IIED, Compl. ¶¶ 40-47, breach of the covenant of good faith and fair dealing, *id*. ¶¶ 48-53, and conversion, *id*. ¶¶ 54-63; and her Eighth, Ninth, and Tenth Causes of Action, which allege violations of RESPA, *id*. ¶¶ 86-92, TILA, *id*. ¶¶ 93-99, and GBL § 349, *id*. ¶¶ 100-103.

Court lacks subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine and *Colorado River* abstention and, in the alternative, that all claims should be dismissed as precluded by *res judicata* and collateral estoppel or for failure to state any claim. *Id*. at 6-24.

On September 3, 2019, an attorney retained by Almazon for the limited purpose of opposing Chase's motions in this action (Dkt. 35-1) filed a memorandum in opposition to Chase's motion to dismiss, Dkt. 22, supported by a lawyer's declaration attaching portions of the state court record, various letters and emails, hotel receipts, and photographs of the Property.[10] Plaintiff agreed to withdraw her First, Fifth, Sixth and Seventh Causes of Action, which claimed lack of standing, slander of title, and violations of FCRA and FDCPA. Opp. Mem. at 14 n.11. Plaintiff defended her remaining claims, arguing that they are well-pleaded (or could be amended to state viable claims), *id*. at 13-23, and that they are not barred by any jurisdictional doctrines, *id*. at 7-13.

On October 1, 2019, Defendant replied and opposed Plaintiff's attempts to expand her claims through amendment. Def. Reply Mem. (Dkt. 30) at 3, 7-8.

Plaintiff requested and was granted an opportunity to file a sur-reply memorandum and a proposed Amended Complaint (*see* Dkts. 32, 33). Dkt. 34. In her proposed Amended Complaint (Dkt. 34-1), Plaintiff repleads all of the claims she did not withdraw, in some instances retaining

---

[10] Although the Court may take judicial notice of the existence and contents of documents filed in the Foreclosure Action or on appeal therefrom, much of the evidence that Plaintiff submitted with her opposition memorandum, however, may be considered—if at all—only in connection with Chase's jurisdictional motion, *see Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) ("The court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits.") (citation omitted), or Plaintiff's request for leave to amend.

their original labels but thoroughly overhauling their contents.[11]  In addition, Plaintiff adds a new

cause of action alleging that Chase deprived Plaintiff of procedural due process in violation of 42

U.S.C. § 1983.  Prop. Am. Compl. ¶¶ 96-112.

## II.    ANALYSIS

### A.    Rule 12(b)(1)

When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter

jurisdiction, and also moves to dismiss on other grounds, the Court must consider the Rule

12(b)(1) motion first.  *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d

Cir. 1990).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule

12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Here, Defendant asks the Court to

dismiss Plaintiff's claims pursuant to Rule 12(b)(1) under *Rooker-Feldman*[12] and *Colorado

River*.[13]  Def. Mem. at 4, 8-11.[14]  For the reasons that follow, *Rooker-Feldman* bars Plaintiff's

request for a declaration that Chase has no "right, title, lien or interest" in the Property, Compl. at

18, but neither *Rooker-Feldman* nor *Colorado River* deprives this Court of jurisdiction to

consider her remaining claims for money damages or restitution.

---

[11]     For example, while Plaintiff's original RESPA claim alleged that Chase failed to give her (unspecified) notices in connection with the Hurricane Sandy monies it held for her benefit, *see* Compl. ¶¶ 86-92, her proposed amended RESPA claim alleges that the bank engaged in prohibited dual tracking during the pendency of the Foreclosure Action, and, in particular, that it wrongfully filed its renewed *lis pendens* and served discovery, both in 2016, while Plaintiff had applications for a loan modification pending.  Prop. Am. Compl. ¶¶ 61-78.

[12]     *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923).

[13]     *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976).

[14]     Defendant also seeks dismissal under Rule 12(b)(1) on *res judicata* and collateral estoppel grounds. Def. Mem. at 4, 6-8.  Preclusion, however, "is not a jurisdictional matter," *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005), and, when it is applicable, produces a dismissal on the merits, rather than for lack of judicial power.  Chase's *res judicata* and collateral estoppel arguments are, therefore, properly considered under Rule 12(b)(6), not Rule 12(b)(1).  *See Siegel v. Apergis*, 610 F. App'x 15, 16 (2d Cir. 2015) ("Issue and claim preclusion go to the merits of a claim, which a court cannot adjudicate in the absence of jurisdiction.").

## 1.  The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284.  The Second Circuit has articulated four requirements that must be met before a federal court may dismiss an action under *Rooker-Feldman*:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]"  Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]."  Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (quoting *Exxon Mobil*, 544 U.S. at 284) (alterations in the original).  *Hoblock* describes the first and fourth requirements as "procedural" and the second and third as "substantive." *Id.*

Here, the procedural elements of the *Rooker-Feldman* doctrine have been met.  *See id.* at 85.  Plaintiff lost in the foreclosure action in New York state court and the Judgment was issued before Plaintiff commenced this action.[15]

To satisfy the substantive elements, the federal action must "complain[ ] of injury from a state-court judgment and seek[ ] to have that state-court judgment reversed." *Hoblock*, 422 F.3d at 86.  If the federal plaintiff "present[s] some independent claim," even if that claim has been

---

[15]     The pendency of Plaintiff's appeals in state court does not affect the finality of the Judgment for *Rooker-Feldman* purposes.  "[T]he Second Circuit has repeatedly treated federal plaintiffs as state-court losers despite the persistence of proceedings or appeals following a dispositive state-court judgment." *Sylvester v. Bayview Loan Servicing LLC*, No. 15-CV-1736, 2016 WL 3566234, at *5 (S.D.N.Y. June 24, 2016) (collecting cases); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 n.1 (2d Cir. 2014) (holding that the relevant judgment was issued prior to the federal court filing for *Rooker-Feldman* purposes even though "the state proceedings continued after entry of the foreclosure judgment, with [plaintiff] filing an appeal and a motion to reopen the judgment").

decided adversely to him in state court, "then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 293 citation omitted). As the Second Circuit has explained, "federal plaintiffs are not subject to the *Rooker-Feldman* bar unless they *complain of an injury* caused by a state judgment." *Hoblock*, 422 F.3d at 87 (emphasis in original).

It is well settled that "an action seeking a declaration of property ownership after loss of title pursuant to a state-court foreclosure judgment [is] barred by *Rooker-Feldman*." *Riley v. Comm'r of Fin.*, 618 F. App'x 16, 17 (2d Cir. 2015). Accordingly, this Court lacks jurisdiction to review or nullify the Judgment of Foreclosure, which it would have to do in order to provide Plaintiff the declaratory relief she seeks.

Plaintiff, however, seeks relief beyond title to the Property. Her remaining claims (for IIED, breach of the implied covenant of good faith and fair dealing, conversion, and violations of RESPA, TILA and GBL § 349) all seek monetary damages or restitution for injuries that are independent of the foreclosure judgment itself. *See* Compl. ¶¶ 47, 53, 63, 92, 98-99, 103. These claims do not require the Court to "review and reject the state foreclosure judgment" because they allege injuries caused by Chase's pre-judgment actions and do not assign error to the state court. *See Graham*, 156 F. Supp. 3d at 507-08 (holding that *Rooker-Feldman* did not bar claims sounding in fraud, breach of contract, breach of the implied covenant of good faith, unjust enrichment, conversion, and deceptive business practices against the loan servicer). Because Plaintiff's damages claims are not premised on any injuries "caused by" the Judgment itself, they are not barred by *Rooker-Feldman*.

### 2. *Colorado River* Abstention

*Colorado River* abstention allows a federal court, in "exceptional circumstances," to "abstain from exercising jurisdiction when parallel state-court litigation could result in

'comprehensive disposition of litigation' and abstention would conserve judicial resources."

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100

(2d Cir. 2012) (quoting *Colorado River,* 424 U.S. at 813, 817-18).   In determining whether the

doctrine applies, courts consider six factors:

> (1) whether the controversy involves a res over which one of the
> courts has assumed jurisdiction; (2) whether the federal forum is
> less inconvenient than the other for the parties; (3) whether staying
> or dismissing the federal action will avoid piecemeal litigation; (4)
> the order in which the actions were filed, and whether proceedings
> have advanced more in one forum than in the other; (5) whether
> federal law provides the rule of decision; and (6) whether the state
> procedures are adequate to protect the plaintiff's federal rights.

*Id.* at 100-01 (quoting *Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522

(2d Cir. 2001)).   "[T]he decision whether to dismiss a federal action because of parallel state-

court litigation does not rest on a mechanical checklist, but on a careful balancing of the

important factors as they apply in a given case, with the balance heavily weighted in favor of the

exercise of jurisdiction."   *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16

(1983).

   "[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to

abstention under *Colorado River.*"   *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998).

"Lawsuits are considered parallel if substantially the same parties are contemporaneously

litigating substantially the same issues in different forums."   *Roy v. Bank of New York Mellon*,

No. 17-CV-6729, 2018 WL 4771898, at *4 (E.D.N.Y. Sept. 30, 2018) (citation and internal

quotation marks omitted).   Additionally, actions are parallel "where there is a substantial

likelihood that the state litigation will dispose of *all* claims presented in the federal case."

*Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) (emphasis in original) (citation

omitted).   "Any doubt regarding the parallel nature of a federal and state action should be

resolved in favor of the exercise of federal jurisdiction." *Id.* (quoting *In re Comverse Tech., Inc. Derivative Litig.*, No. 06-CV-1849, 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)).

The Foreclosure Action and the damages claims in this action are not "parallel" because the parties are not "*contemporaneously* litigating substantially the same issues," *Roy*, 2018 WL 4771898, at *4 (emphasis added), in a manner that could lead to future inconsistent resolutions.[16] To the contrary: a final judgment was issued in the Foreclosure Action almost six months before this action was commenced. Thus, the question is not whether there is a likelihood that the state court litigation "will" dispose of the claims before this Court, *Shields*, 891 F. Supp. 2d at 577; the question is whether it already has. That question is properly analyzed under the doctrines of *res judicata* and collateral estoppel rather than as a basis for *Colorado River* abstention. *See Woodford*, 239 F.3d at 524 ("[T]he primary context in which we have affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes *not preventable by principles of res judicata and collateral estoppel*.") (emphasis added).

The Court therefore grants Defendant's Rule 12(b)(1) motion to dismiss Plaintiff's claim for declaratory relief pursuant to the *Rooker-Feldman* doctrine; the Rule 12(b)(1) motion is denied as to Plaintiff's remaining claims, which will be evaluated under Rule 12(b)(6).

## B. Rule 12(b)(6)

If a complaint fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir.

---

[16]     Because the Court has concluded that jurisdiction is lacking over Plaintiff's claims for declaratory relief under *Rooker-Feldman*, the Court  need not and does not address whether jurisdiction should be declined pursuant to *Colorado River*.

2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Those factual allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When faced with a Rule 12(b)(6) motion, the trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Where, as here, the Plaintiff commenced this action *pro se*, her Complaint (although not her proposed Amended Complaint, which was drafted by an attorney) must be construed "liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests." *J.S. v. T'Kach*, 714 F.3d 99, 103 (2d Cir. 2013) (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)); *see also Nicholas v. Bratton*, No. 15-CV-9592, 2019 WL 2223407, at *3 (S.D.N.Y. May 23, 2019) ("[T]he majority of courts have continued to afford liberal construction to *pro se* pleadings even where counsel takes over the case at a later stage.") (collecting cases). *Pro se* status does not, however, "exempt a party from compliance with relevant rules of procedural and substantive law." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009) (citation omitted). Thus, even a *pro se* plaintiff "must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir.

2013). Moreover, the court need not accept allegations that are "contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005).

**1. *Res Judicata***

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply New York *res judicata* law to New York state court judgments. *Hoblock*, 422 F.3d at 93. New York applies a transactional approach to the doctrine of *res judicata.* "[O]nce a claim or counterclaim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 347 (1999) (quoting *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 357 (1981)); *see also Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) ("Under both New York law and federal law, the doctrine of res judicata, or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) and Restatement (Second) of Judgments § 24(1) (1982))). "Thus, where a plaintiff in a later action brings a claim for damages that could have been presented in a . . . proceeding against the same party, based upon the same harm and arising out of the same or related facts, the claim is barred by res judicata." *Parker*, 93 N.Y.2d at 347-48.

Courts in this circuit have routinely applied *res judicata* to preclude claims that were or could have been raised in a prior foreclosure proceeding.[17] Thus, "[a] judgment of foreclosure and sale entered against a defendant is final as to all questions at issue between the parties, and concludes all matters of defense which were or might have been litigated in the foreclosure action."[18] *Signature Bank v. Epstein*, 95 A.D.3d 1199, 1200 (2d Dep't 2012) (citing *Long Island Sav. Bank, FSB v. Mihalios*, 269 A.D.2d 502, 503 (2d Dep't 2000)).

The Court notes, however, that other New York courts, both state and federal, have applied *res judicata* more narrowly, precluding only claims and theories that were actually raised in the prior proceeding or that would be inconsistent with the prior judgment. Those cases have pointed to New York's permissive counterclaim regime, explaining that a transaction-based approach effectively makes all counterclaims compulsory.[19] Following that logic, some district

---

[17]     *See, e.g.*, *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 422 (S.D.N.Y. 2008) ("Because plaintiffs could have presented the same claims they now assert, including the RESPA claim, . . . in the action for foreclosure, the doctrine of *res judicata* bars this litigation against [Defendant] who was the state court plaintiff."); *Pennicott v. J.P. Morgan Chase Bank, N.A.*, No. 15-CV-6792, 2017 WL 4157371, at *2 (S.D.N.Y. Sept. 18, 2017) (precluding plaintiff from bringing claims for breach of contract, breach of the covenant of good faith and fair dealing, and violation of GBL § 349 after she failed to raise them in prior foreclosure action); *Trakansook v. Astoria Fed. Sav. & Loan Ass'n*, No. 06-CV-1640, 2007 WL 1160433, at *7 (E.D.N.Y. Apr. 18, 2007) (barring 42 U.S.C. § 1983 claim under *res judicata*), *aff'd*, No. 07-2224-CV, 2008 WL 4962990 (2d Cir. Nov. 21, 2008).

[18]     A default judgment has the same *res judicata* effect as a fully litigated judgment. *See Graham*, 156 F. Supp. 3d at 510 n.5 ("Graham is barred by res judicata notwithstanding the fact that he defaulted in the state court foreclosure proceeding."); *Pennicott*, 2017 WL 4157371, at *2 (dismissing plaintiff's federal claims after she "failed to appear" in the state court foreclosure action); *83-17 Broadway Corp. v. Debcon Fin. Servs., Inc.*, 39 A.D.3d 583, 585 (2d Dep't 2007) ("Since the plaintiff defaulted in both foreclosure actions and did not successfully move to vacate its defaults, the judgment of foreclosure and sale entered in those actions preclude it from litigating the validity of the mortgages in this action."); *Tantillo v. Giglio*, 156 A.D.2d 664, 664 ( 2d Dep't 1989) ("Under New York law, a default judgment generally bars litigation of issues that were, or could have been, determined in the prior action.").

[19]     *See Pace v. Perk*, 81 A.D.2d 444, 460-61 (2d Dep't 1981) ("Where a defendant may interpose a claim as a counterclaim but fails to do so, the doctrine of *res judicata* in the sense of claim preclusion does not apply to prevent him from subsequently maintaining an action on that claim. In New York all counterclaims are permissive."); *see also Mason Tenders Dist. Council Pension Fund v. Messera*, No. 95-CV-9341, 1996 WL 351250, at *9 (S.D.N.Y. June 26, 1996) ("[A]bsent a compulsory counterclaim rule, a pleader is never barred by claim preclusion from suing independently on a claim that he refrained from pleading as a counterclaim in a prior action." (citation omitted)); *Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Protestant Dutch Church of City of New York*, 68 N.Y.2d 456, 461 (1986) (holding that, although New York does not have a compulsory counterclaim rule, a defendant is barred from bringing a second action seeking relief inconsistent with the judgment in the first action).

courts in this circuit have allowed plaintiffs to litigate claims that could have been (but were not) asserted in prior foreclosure or debt-collection proceedings. *See, e.g.*, *Cameron v. LR Credit 22, LLC*, 998 F. Supp. 2d 293, 298 (S.D.N.Y. 2014) ("New York, unlike the federal system, does not have a compulsory counterclaim rule, and, therefore, res judicata does not bar claims that could have been raised by the defendant as counterclaims in a previous action but were not actually raised." (citation omitted)); *Guido v. Wells Fargo Bank, N.A.*, No. 16-CV-1568, 2017 WL 5515859, at *3-4 (S.D.N.Y. Mar. 21, 2017) ("Plaintiffs are correct that New York law permits [them] to assert claims that could have been asserted as permissive counterclaims in a prior action."), *aff'd*, 699 F. App'x 54 (2d Cir. 2017).

While that rationale is not without some force, Plaintiff has not argued that it controls, and the Court cannot adopt it. As the New York Court of Appeals has recently observed, the definition of a "cause of action" or a "claim" for *res judicata* purposes has expanded over time, which has, in turn, broadened the range of precluded claims. *See Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 31 N.Y.3d 64, 75-76 (2018). More importantly, the Second Circuit has interpreted broadly New York's *res judicata* law, construing it to apply to all claims that "could have been raised" in a prior proceeding. *See Maharaj*, 128 F.3d at 97. While a federal court construing state law must follow the pronouncements of the state's highest court, a district court is also bound by the circuit court's interpretation of state law, at least until the state's highest court has clearly ruled otherwise or the federal appellate court has reconsidered. *See, e.g.*, *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 296 (S.D.N.Y. 2004) (concluding that the Second Circuit's interpretation of state law is "binding" even though it has been criticized by state's intermediate appellate courts); *Perks v. Town of Huntington,* 251 F. Supp. 2d 1143, 1160 (E.D.N.Y. 2003) (same); *see also Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 281-83 (2d

Cir. 1981) (holding that courts in the Second Circuit should defer to "a decision made by the court of appeals of another circuit on the law of a state within that other circuit," unless the decision inadvertently overlooked or was superseded by later state authorities). Thus, notwithstanding some authority to the contrary, Plaintiff's claims are barred by *res judicata* if they arose out of the same "transaction or series of transactions" as the Foreclosure Action, and were (or could have been) litigated in that proceeding.[20] *O'Brien*, 54 N.Y.2d at 357.

Plaintiff does not dispute that her claims in this action all arose out of the "same transaction or series of transactions" that were at issue in the Foreclosure Action. *See id.* Nor does she deny—with the exception of her RESPA dual-tracking claim—that the claims she seeks

---

[20]     Even if the Court were to adopt the narrower conception of *res judicata*, the only claim in this action that was not actually raised in the foreclosure proceeding and would not be inconsistent with the foreclosure judgment is Plaintiff's claim for IIED, which Chase allegedly committed by directing a non-party, Safeguard, to change the locks on Plaintiff's property and destroy her shed, and by initiating a foreclosure while Plaintiff's application for a loan modification was allegedly pending. *See* Compl. ¶¶ 40-47; Prop. Am. Compl. ¶¶ 34-40.

     Under New York law, the tort of IIED has four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of N.Y.*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993)).

     Plaintiff has not alleged non-conclusory facts from which the Court can infer that Chase committed IIED. Her allegations as to Chase's intent consist exclusively of legal conclusions. *See* Prop. Am. Compl. ¶ 35 ("Defendant committed the acts . . . with the intent to cause, as well as with complete utter and reckless disregard of the probability of causing, the Plaintiff to suffer severe emotional distress."). Furthermore, while the Court does not doubt that the foreclosure proceeding as a whole has taken a toll on Plaintiff, she has not adequately alleged that Safeguard's actions relative to her locks and her shed specifically caused her to suffer severe distress. Additionally, a claim based on property damage or trespass generally does not state an IIED claim because IIED is reserved for conduct that does not clearly fall within the ambit of another tort. *Nelson v. Ulster Cty., New York*, 789 F. Supp. 2d 345, 358 (N.D.N.Y. 2010); *Fischer v. Maloney*, 43 N.Y.2d 553, 558 (1978). To the extent that Plaintiff claims that Chase committed IIED by initiating a foreclosure action while her loan modification application was allegedly pending, those allegations mirror her amended dual-tracking claim under Dodd-Frank, and, as discussed *infra*, are unfounded. *See* Prop. Am. Compl. ¶¶ 35, 67; *see also Calizaire v. Mortg. Elec. Registration Sys., Inc.*, No. 14-CV-1542, 2017 WL 895741, at *8 (E.D.N.Y. Mar. 6, 2017) ("Debt collection or foreclosure—even when initiated improperly—will typically support an IIED claim only if accompanied by other 'loathsome conduct.'" (quoting *Assocs. First Capital v. Crabill*, 51 A.D.3d 1186, 1188 (3d Dep't 2008))), *aff'd*, 763 F. App'x 124 (2d Cir. 2019). To the extent that Plaintiff bases her IIED claim on other allegedly unfair actions taken by Chase or its law firm during the foreclosure proceeding, such as failure to provide notice or to release funds, she previously raised those arguments in the state proceeding—the claim would be precluded even under a narrow view of *res judicata*. *See, e.g.*, Almazon Order to Show Cause (Dkt. 8-23) at 2. Nor can the Court conclude that Chase's conduct, as alleged, rises to the level of "extreme and outrageous conduct." *See Calizaire*, 2017 WL 895741, at *8 (holding that knowing initiation of foreclosure proceedings without right to do so was not sufficiently "outrageous" to support IIED claim). Thus, even if Plaintiff's IIED claim were not barred by *res judicata*, she has failed to state a claim.

to pursue here "could have been litigated" (and for the most part actually were litigated) in the Foreclosure Action, where they were "brought to a final conclusion" by the Judgment. Under New York law, nothing more is required to show that Plaintiff's non-RESPA claims are barred by *res judicata*. *See*, *e.g.*, *Senatore v. Ocwen Loan Servicing, LLC*, No. 16-CV-8125, 2017 WL 3836056, at *1, 4 (S.D.N.Y. Aug. 31, 2017) (dismissing borrower's RICO, FDCPA, fraud, breach of contract, unfair competition, and unjust enrichment claims against lender on *res judicata* grounds because plaintiff was "clearly seeking to re-litigate the same transaction and series of events at issue in the prior state court litigation"); *Trakansook*, 2007 WL 1160433, at *6-7 (holding that *res judicata* barred plaintiff's § 1983 claims because they "arise from the same transaction or series of events" and could have been raised in state court).

Plaintiff seeks to defeat the *res judicata* effect of the Foreclosure Action by alleging procedural deficiencies in that proceeding. Thus, Plaintiff contends that her claims are not precluded because she did not receive Chase's summary judgment papers in time to respond, which deprived her of a "full opportunity to litigate the claims at issue here" in state court. Opp. Mem. at 8, 10.[21] Next, Plaintiff argues that *res judicata* does not apply because she was not represented by counsel in 2017, *id*. at 8; that she has new evidence regarding Chase's involvement in the actions of Safeguard, *id*. at 9; and that her dual tracking claim was not "ripe" until the state court entered an order for a foreclosure sale. *Id*. at 8, 10. These arguments are

---

[21]     Plaintiff submits an email that she sent to Chase's counsel on April 10, 2018, as support for this contention. Chinta Decl. Ex. 31. In that email, Almazon wrote, *inter alia*, that she had just discovered that the bank had filed a motion and complained that she had not received a copy of the papers. *Id*. Chase's summary judgment motion had been served almost nine months earlier, on June 15, 2017, *see* Chinta Decl. Exs. 20 (proof of service), 30 (cover letter), and the motion had been granted on September 18, 2017. *See* Chinta Decl. Ex. 22; Peyzner Decl. Ex. E. Plaintiff's April 10, 2018 email—which was sent six months after she had appealed the grant of Chase's summary judgment motion on November 6, 2017—must have been referring to some other motion. The email, therefore, sheds no light on whether and when Plaintiff was served with Chase's summary judgment papers.

unavailing; Plaintiff's ripeness argument does save her dual tracking claim from *res judicata* but, as explained below, the claim fails for other reasons

### a. Notice of Chase's Summary Judgment Motion

Plaintiff is collaterally estopped from arguing that she was not properly served with Chase's summary judgment motion. Collateral estoppel, or issue preclusion, is a doctrine that bars the re-litigation of specific factual issues that were raised, litigated, and decided in previous litigation. "Under New York law, collateral estoppel bars claims where '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" *Graham*, 156 F. Supp. 3d at 505-06 (quoting *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir. 1995)).

Justice Adams considered Plaintiff's inadequate notice claim on the merits and rejected it in his Memorandum Decision granting a judgment of foreclosure and sale. Peyzner Decl. Ex. P at 29. He concluded that Almazon was in fact served with the summary judgment motion papers, both by Federal Express on June 15, 2017, and thereafter by email. *Id.* Thus, the very issue that Plaintiff seeks to interpose as a defense to the application of *res judicata* was itself "actually and necessarily decided" against her in the Foreclosure Action after Almazon had a "full and fair opportunity" to litigate it. Plaintiff was free to appeal Justice Adams's Memorandum Decision (and did so), but she is collaterally estopped from re-raising it in this action.

Even if she were not collaterally estopped, Plaintiff's argument would still fail. State proceedings need only satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to be entitled to full faith and credit. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481 (1982). The requirements of due process are

satisfied if the first court "provided an adequate opportunity to challenge the fairness of its procedures."  18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4415 (3d ed. 2019).  Here, the procedural defect that Plaintiff alleges— inadequate notice of Chase's 2017 summary judgment motion—did not render the state court's Judgment, issued some 18 months later, "constitutionally infirm."  *Kremer,* 456 U.S. at 482.  During those 18 months Plaintiff had ample opportunity to raise the alleged lack of notice and could have challenged the resulting summary judgment within the state court proceeding. Plaintiff could have moved to vacate the summary judgment order pursuant to N.Y. C.P.L.R. § 5015(a), which permits a state trial court to vacate an order for "excusable default."  She chose not to do so, instead filing an unsuccessful appeal from the summary judgment decision, followed by a proposed OSC (which may also have served as her opposition to Chase's motion to confirm the referee's report) seeking relief based on her claim that she received defective notice of the summary judgment motion.  Notwithstanding her procedural mistakes, Justice Adams considered her arguments regarding defective service on the merits and rejected them.

For these reasons, Plaintiff's renewed allegation that she was not properly served with Chase's state court summary judgment motion does not provide her with an "escape hatch" from the preclusive effect of the Judgment.  *See Yeiser*, 535 F. Supp. 2d at 426 (where "issues were raised and addressed multiple times throughout the state court proceedings," re-litigation of those claims is barred by collateral estoppel notwithstanding that "plaintiffs do not agree with the state court's conclusion").

### b.  Plaintiff's *Pro Se* Status

In New York, it is well-settled that "[t]he doctrine of *res judicata* applies to *pro se* litigants."  *Id.* at 426 (collecting cases); *see also Sosa v. JP Morgan Chase Bank*, 33 A.D.3d 609, 611 (2d Dep't 2006) (applying *res judicata* against *pro se* litigant); *Lake George Park Comm'n*

*v. Salvador*, 245 A.D.2d 605, 606 (3d Dep't 1997) ("A *pro se* litigant acquires no greater rights than any other litigant.").[22] Plaintiff's contention that *res judicata* should not apply to her because she did not have counsel when Chase filed its summary judgment motion is, therefore, without merit.

### c. New Evidence

Plaintiff claims in her opposition brief that she has uncovered "new evidence" concerning Defendant's "instructions to Safeguard during the pendency of the foreclosure action." Opp. Mem. at 9.[23] "As a general rule," however, "newly discovered evidence does not preclude the application of *res judicata*" unless "the evidence was either fraudulently concealed or . . . could not have been discovered with due diligence." *Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir. 1991); *see also Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*, 80 A.D.3d 453, 454 (1st Dep't 2011) (upholding dismissal on claim preclusion grounds where the letters characterized as new evidence "could have been discovered in time to assert them in the allegations of the prior complaint"); *Doherty v. Cuomo*, 76 A.D.2d 14, 21 (4th Dep't 1980) ("[T]he fact that the second action contains new evidence . . . does not sufficiently distinguish the claim of the respondent in this case from its claim in the prior proceeding so as to preclude application of the doctrine of res judicata.").

---

[22] The Eleventh Circuit case on which Plaintiff relies does not support her position. *See Akin v. PAFEC Ltd.*, 991 F.2d 1550, 1559 (11th Cir. 1993) (holding that *res judicata* did not bar plaintiff's claims because plaintiff "was not a party or a privy of any party to the prior action").

[23] The new evidence consists of a September 6, 2018, email from Safeguard to Almazon, offering to provide the "records you are requesting" with "the approval of Safeguard's client" or "a court ordered Subpoena," and recommending that she "contact your lender" to request the required approval. Chinta Decl. Ex. 32. The Court surmises that Almazon views this email as further support for her Fourth Cause of Action, which alleges that Chase converted Plaintiff's Property for its use and benefit when it "engag[ed] the services of Safeguard," which then "removed and destroyed her shed and its contents." Compl. ¶¶ 22, 59-63.

There is no allegation that Safeguard's conduct (or its relationship with Chase) was concealed from Plaintiff during the Foreclosure Action, fraudulently or otherwise. To the contrary: Plaintiff has been complaining about Safeguard since at least July 2018, *see* Parker Ltr. Ex. B at 3, and she described the Safeguard/Chase relationship in her April 2019 reconsideration motion, *see* Peyzner Decl. Ex. P at 5 (claiming that Chase "hired Safeguard" and thereafter "act[ed] by and through" Safeguard to "unlawfully Trespass[ ] and harass[ ] defendant's property"), much the way she now characterizes their relationship in her federal pleading. *See* Compl. ¶ 22 ("Safeguard, by and through the direction of the Defendant, visited Plaintiff's Property and both removed and destroyed her shed and its contents, thereby damaging such property, and Safeguard took other action creating damage and destruction to Plaintiff's Property."). Nor does Plaintiff point to any new evidence, previously unknown to her, that could call into question the preclusive effect of the Judgment. Plaintiff's contention that *res judicata* should not apply to one or more of her current claims because she "possesses new evidence" about Safeguard must, therefore, fail.[24]

### d. Dual Tracking

Plaintiff contends that her Eighth Cause of Action, brought under RESPA, is not barred by the Judgment because it states a "claim for 'dual tracking' under 'Dodd-Frank'" that "was never adjudicated nor ripe" in state court. Opp. Mem. at 8, 14; *see also* Sur-Reply Mem. at 1 (referring to plaintiff's "dual tracking claim under RESPA"). Plaintiff is correct that a dual

---

[24] Only Chase and Almazon were parties to the Foreclosure Action. Therefore, while the Judgment in that action is *res judicata* as to her claim that Chase converted her Property by retaining Safeguard to secure and maintain it, she may not be barred from litigating any claims against Safeguard, which she has attempted to do. *See* Complaint, *Almazon v. Safeguard Properties, Inc.*, Index No. 101671/2019 (N.Y. Sup. Ct. N.Y. Co. Oct. 25, 2019). On November 25, 2019, Safeguard removed the case to this Court, where it was docketed as No. 19-CV-10893. On February 11, 2020, the Hon. Katherine Polk Failla ordered the case transferred to the Eastern District of New York, where it has been docketed as No. 20-CV-00858. Almazon accuses Safeguard of trespass and conversion.

tracking claim of the type she describes in her briefs would not be precluded by the Judgment. The Complaint, however, contains no such claim.

RESPA is "a consumer protection statute that was enacted by Congress to 'insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges." *Galli v. Astoria Bank*, No. 16-CV-3549, 2017 WL 4325824, at *3 (E.D.N.Y. Sept. 27, 2017) (quoting 12 U.S.C. § 2601(a)). RESPA requires lenders, *inter alia*, to provide borrowers with standard disclosures that "conspicuously and clearly" itemize all closing charges. 12 U.S.C.A. §§ 2603(a), 2604. It also requires: lenders to disclose whether the servicing of the loan may be assigned, sold, or transferred, *see* 12 U.S.C. § 2605(a); servicers to provide prompt notice of any such assignment, sale, or transfer, *id*. §§ 2605(b)-(c); and servicers to respond promptly and in writing to any "qualified written request" from the borrower "for information relating to the servicing of such loan." *Id*. § 2605(e). None of these provisions prohibits, or provides a remedy for, dual tracking.

RESPA was amended, effective July 21, 2011, by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank), Pub. L. No. 111–203, 124 Stat. 1376 (2010). Dodd-Frank also created the Consumer Financial Protection Board (CFPB) and charged it with creating rules, regulations, and interpretations necessary to achieve RESPA's purpose. *See* 12 U.S.C. § 2617(a). The CFPB, in turn, adopted a series of regulations, effective January 10, 2014, that servicers must follow after a payment default. *Galli*, 2017 WL 4325824, at *4. One such regulation was "Regulation X," 78 Fed. Reg. 10696 (Feb. 14, 2013), now codified at 12 C.F.R. pt. 1024. Regulation X contains provisions governing "dual tracking" that prohibit a servicer from commencing a foreclosure proceeding or conducting a foreclosure sale if the borrower has

submitted a "complete loss mitigation application" within specified timeframes.  12 C.F.R.

§§ 1024.41(f)-(g).  Borrowers have a private cause of action to enforce the dual tracking

provisions and to recover actual damages, costs, and attorneys' fees.  12 U.S.C. § 2605(f); 12

C.F.R. § 1024.41(a); *Sylvester*, 2016 WL 3566234, at *2.  RESPA violations, however, do not

"affect the validity or enforceability of any sale or contract for the sale of real property or any

loan, loan agreement, mortgage, or lien made or arising in connection with a federally related

mortgage loan."  12 U.S.C. § 2615.

Because RESPA violations do not affect the validity or enforceability of a mortgage loan,

a RESPA disclosure violation is not a defense to foreclosure, although it is frequently pleaded as

a counterclaim in a foreclosure action.  *See*, *e.g.*, *Deutsche Bank Nat. Tr. Co. v. Holler*, 65

N.Y.S.3d 491 (Sup. Ct. Suffolk Co. 2017) (table; text at 2017 WL 3390578, at *13).  Indeed,

applying the transactional approach required by state law, federal courts in New York routinely

hold that a plaintiff against whom a judgment of foreclosure has been obtained cannot thereafter

pursue a RESPA disclosure violation claim arising out of the same mortgage loan.[25]

Like a RESPA disclosure violation claim, a dual tracking claim brought pursuant to

Regulation X is not a defense to foreclosure.  *See, e.g.*, *Wilmington Tr., Nat'l Ass'n as Tr. of

ARLP Sec. Tr., Series 2014-2 v. Garcia*, No. 15-CV-00378, 2018 WL 7253970, at *8 (S.D. Tex.

Dec. 19, 2018) ("[I]f Plaintiff impermissibly engaged in dual tracking . . . this will give rise to a

private cause of action for damages, but it is not a basis to stop foreclosure."); *HSBC Bank USA*

---

[25]     *See Talley v. LoanCare Servicing, Div. of FNF*, No. 15-CV-5017, 2018 WL 4185705, at *7 (E.D.N.Y. Aug. 31, 2018) (quoting *Yeiser*, 535 F. Supp. 2d at 422) ("Because plaintiffs could have presented the same claims they now assert, including the RESPA claim, as defenses or counterclaims in the action for foreclosure, the doctrine of *res judicata* bars this litigation."); *Zap v. Fed. Home Loan Mortg. Corp.*, No. 15-CV-00624, 2016 WL 2992147, at *4-5 (N.D.N.Y. May 20, 2016) (dismissing RESPA claim based on an allegedly improperly noticed assignment because it could have been litigated in the underlying foreclosure action); *Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *7 (E.D.N.Y. Mar. 11, 2016) (holding that claim preclusion "bars federal review" of claims, including RESPA claims, "which were, or could have been brought as defenses in the State Action").

*for Certificate Holders of ACE Sec. Corp. Home Equity Loan Tr., Series 2006-FM2 Asset-Backed Pass-Through Certificates v. Ahmad*, 106 N.Y.S.3d 727 (N.Y. Sup. Ct. Suffolk Co. 2018) (table; text at 2018 WL 1831361, at *2) ("[A] violation by the servicer/lender of the prohibition against 'dual tracking' merely affords a borrower a separate action in federal court against the servicer/lender for the assessment of a monetary penalty.").

Unlike a RESPA disclosure violation, however, a dual tracking claim is not ripe (and therefore cannot be asserted as a counterclaim in a foreclosure proceeding) as long as "foreclosure proceedings are still pending" and the plaintiff has not yet lost her property. *See Wenegieme v. Bayview Loan Servicing*, No. 14-CV-9137, 2015 WL 2151822, at *2 (S.D.N.Y. May 7, 2015) (holding that plaintiffs' "dual tracking claim under 12 C.F.R. § 1024.41(f) [was] premature" because "their claim for damages is contingent on a negative outcome in a proceeding that is currently ongoing—and that they may yet win"); *see also Garcia*, 2018 WL 7253970, at *8 ("If their dual tracking claim is legitimate, Defendants may file suit once the servicer has foreclosed on their property, or they are able to demonstrate other damages."), Thus, Plaintiff is correct that a Dodd-Frank dual tracking claim would not have been ripe during the Foreclosure Action and, therefore, is not now barred by *res judicata*. *See Storey v. Cello Holdings, LLC,* 347 F.3d 370, 383 (2d Cir. 2003) ("Claims arising subsequent to a prior action need not, and often perhaps could not, have been brought in that prior action; accordingly, they are not barred by *res judicata*.").

Plaintiff does not, however, plead anything resembling a Dodd-Frank dual tracking claim in her Complaint. Her Eighth Cause of Action, labeled "violation of RESPA," alleges that Chase "failed to account for and to provide Plaintiff with disclosures required under RESPA in connection with monies being held by Defendant for the benefit of Plaintiff that should have

been lawfully returned to Plaintiff for Hurricane Sandy home repairs." Compl. ¶ 88; *see also id.* ¶ 90 (alleging that Chase violated RESPA by failing to provide "requisite details and disclosures as required under the law"). Even construed liberally, Plaintiff's allegations assert RESPA disclosure violations, which could have been and were asserted during the Foreclosure Action.[26] As pleaded, therefore, Plaintiff's Eighth Cause of Action is barred by *res judicata. See, e.g.*, *Yeiser*, 535 F. Supp. 2d at 422; *Talley*, 2018 WL 4185705, at *7.

In her opposition and sur-reply briefs, prepared by counsel, Plaintiff attempts to recast her Eighth Cause of Action as a Dodd-Frank dual tracking claim, arguing that although the Complaint does not use the words "dual tracking," the "essence of that claim is included," because the Complaint alleges that Chase "move[d] forward with foreclosure proceedings while simultaneously working with the borrower on loan modification." Sur-Reply Mem. at 2; *see also* Opp. Mem. at 17 (arguing that Chase continued to engage in dual tracking after the Foreclosure Action was filed, including by "filing a lis pendes [sic] in March 2016 during active modification review, and serving discovery requests in August 2016 when a modification application was pending").

The Complaint does indeed allege (albeit not specifically in the Eighth Cause of Action) that Plaintiff sought a modification of the CEMA in 2010, but that, instead of working with her, Chase commenced foreclosure proceedings "during the pendency of [her] modification request." Compl. ¶¶ 9, 13. These vague and scanty factual allegations do not, however, add up to a Dodd-

---

[26]     *See* State Ct. Ans. ¶¶ 54-64 (alleging that Almazon was "confused by the several loans and consolidations given within a short time" and that the "disclosures given by [Chase] were inadequate" under both RESPA and TILA). Moreover, although Plaintiff never formally amended her pleadings in state court to link her RESPA claim to Chase's handling of the Hurricane Sandy funds to which she claimed to be entitled, she was clearly aware of the issue, which she raised in a variety of procedural contexts in state court. *See, e.g.*, Peyzner Decl. Ex. D (Dkt. 8-6 at 115-17) (November 16, 2016 affidavit in support of request for TRO, asserting that Chase failed to release Hurricane Sandy funds); Peyzner Decl. Ex. P at 5 (April 2, 2019 affidavit in support of reconsideration motion, asserting that Chase "refused to release" Hurricane Sandy funds).

Frank dual tracking claim under 12 C.F.R. § 1024.41(f). Indeed, they could not constitute such a claim, no matter how detailed, because the bank "commenced foreclosure proceedings" on January 15, 2013, approximately one year before Regulation X was effective. *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X) (Mortgage Servicing Rules), 78 Fed. Reg. 10696-708 (Feb. 14, 2013) ("[T]he Bureau is requiring that, as a general matter, creditors and other affected persons begin complying with the final rules on January 10, 2014.").[27] Moreover, the Complaint does not contain *any* factual allegations suggesting that Chase violated 12 C.F.R. § 1024.41(g) by engaging in dual tracking after the Foreclosure Action was filed, much less that it did so by "filing a lis pendes [sic] in March 2016 during active modification review, and serving discovery requests in August 2016 when a modification application was pending." Opp. Mem. at 17. Plaintiff's attempt to save her RESPA claim from *res judicata* by recasting it as a Dodd-Frank dual tracking claim must therefore fail.

### 2. *Leave* to *Amend*

As a general rule, *pro se* litigants are liberally granted leave to amend their pleadings but, as with counseled litigants, leave to amend need not be granted when amendment would be

---

[27] The Second Circuit has not addressed whether Regulation X applies retroactively, but other courts considering the issue have squarely held that it does not. *Searcy v. CitiMortgage, Inc.*, 733 F. App'x 735, 738 (5th Cir. 2018) ("The relevant RESPA provisions went into effect on January 10, 2014, and do not apply retroactively."); *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 297 (6th Cir. 2015) (discussing the rules and comments for Regulation X and explaining that "[i]t seems unlikely that the CFPB intended to retroactively apply the rule after establishing a later effective date in large part based on industry concerns that compliance prior to that date was not possible"); *Dellis v. Fay Servicing, LLC*, No. 18-CV-202, 2019 WL 2579592, at *6 (E.D. Wis. June 24, 2019) (concluding that Regulation X is non-retroactive based on CFPB amendments and guidance). This Court concurs with the reasoning of those courts: Regulation X took effect on January 10, 2014, and does not apply retroactively.

futile.[28] *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016). In this case, Plaintiff has, for all practical purposes, already taken the opportunity to amend when her counsel submitted a proposed amended pleading as part of her sur-reply, which this Court has considered. Because the proposed amended pleading fails to correct the fatal defects in Plaintiff's case, further leave to amend is denied as futile.

In her proposed Amended Complaint, Plaintiff repleads five of her remaining claims—for IIED, breach of the covenant of good faith, conversion, violation of TILA, and unfair competition pursuant to GBL § 349—under the same legal theories. Although she has substantially augmented, updated, and (in some instances) reorganized the underlying factual allegations,[29] these five claims still arise from the "same transaction or series of transactions" that were at issue in the Foreclosure Action, *see O'Brien*, 54 N.Y.2d at 357, and still present issues which were or could have been presented in state court. Consequently, they remain barred by *res judicata*, making amendment futile.

There are two new claims in the proposed Amended Complaint. The first alleges that Chase engaged in "dual tracking" in violation of Regulation X. Prop. Am. Compl. ¶¶ 61-78. The second alleges that Chase deprived Plaintiff of her procedural due process rights in violation of 42 U.S.C. § 1983. *Id.* ¶¶ 96-112. Because the proposed Amended Complaint was prepared by

---

[28]     Plaintiff's counsel, Padmaja Chinta, filed a motion to withdraw her appearance after completing briefing on the motion; the motion to withdraw was granted on December 30, 2019. Dkt. 48. The Court notes that new counsel, Lynn Judell, recently filed an appearance on behalf of Plaintiff, Dkt. 60; incoming counsel has not expressed any views on the pending motion to dismiss or the futility of any further amendments, and it is not apparent to the Court whether incoming counsel has been retained for a limited purpose, as was the case with her predecessor.

[29]     Plaintiff has, for example, updated her IIED claim by adding allegations that Safeguard's conduct in 2018 contributed to her "severe emotional distress." Prop. Am. Compl. ¶¶ 37-39. She has updated her claim for breach of the covenant of good faith and fair dealing by alleging that Chase "continued to take impermissible actions after commencing the foreclosure proceeding," including "impermissibly" withholding Hurricane Sandy funds, "impermissibly" trespassing on and damaging the Property through Safeguard, and "impermissibly" failing to serve Plaintiff with motion papers in the Foreclosure Action. *Id.* ¶¶ 45-50. She has deleted all of her allegations regarding Safeguard from her conversion claim, replacing them with more detailed allegations about Chase's alleged withholding of the Hurricane Sandy funds. *Id.* ¶¶ 52-60.

a licensed attorney, the Court need not review it with any special generosity.  *See Rose v. Garritt*, No. 16-CV-3624, 2018 WL 443752, at *4 n.6 (S.D.N.Y. Jan. 16, 2018) (declining to apply liberal pleading standards to a *pro se* complaint that had been deemed sufficient by newly retained counsel); *Williams v. City of New Rochelle*, No. 13-CV-3315, 2014 WL 2445768, at *3 (S.D.N.Y. May 29, 2014) (holding that liberal pleading standard available for *pro se* litigants "no longer applies now that Plaintiff is represented by counsel").  Evaluating the new claims in the proposed Amended Complaint using the motion to dismiss standard, it is clear that leave to amend would be futile.  *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss."),

### a. Dual Tracking

Plaintiff alleges in her proposed Amended Complaint that Chase's "conduct of taking various actions in the foreclosure proceeding while Plaintiff's loan modification [request] was still pending constitutes dual tracking" in violation of Regulation X.  Prop. Am. Compl. ¶¶ 63, 68, 77.  The "various actions" that Plaintiff alleges Chase took while Plaintiff's loan modification application was pending include filing an amended *lis pendens* and making discovery requests.  *Id.* ¶¶ 67, 70-71.  Plaintiff does not specify which provision of Regulation X she contends those actions violated.  Because she complains only about conduct that took place well after the commencement of the Foreclosure Action, however, the Court construes the claim to allege violations of 12 C.F.R. § 1024.41(g).  That section provides, in relevant part:

> If a borrower submits a complete loss mitigation application . . . more than 37 days before a foreclosure sale, a servicer *shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale*, unless:

(1)    The servicer has sent the borrower a notice . . . that the borrower is not eligible for any loss mitigation option [and there are no appeals pending or possible];

(2)    The borrower rejects all loss mitigation options offered by the servicer; or

(3)    The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g) (emphasis added).

Plaintiff's dual tracking claim is deficient in at least three respects.  First, she appears to interpret the regulation as prohibiting a servicer from taking any "action" in a pending foreclosure proceeding, no matter how minor, whenever the borrower seeks a loan modification. The Regulation X prohibition is not, however, that broad.  It extends only to moving for a foreclosure judgment or order of sale, or conducting that sale.  The CFPB has made clear that § 1024.41(g) does not prohibit a servicer from advancing the foreclosure process (if the first foreclosure notice or filing was made before the servicer received a complete loss mitigation application) so long as the servicer does not take action that will "directly result in the issuance of a foreclosure judgment or order of sale, or a foreclosure sale."  Mortgage Servicing Rules, 78 Fed. Reg. 10834.  Neither filing a *lis pendens* nor serving discovery requests is an action "that will directly result in the issuance of a foreclosure judgment or order of sale, or a foreclosure sale."

Second, Plaintiff fails to allege key facts about her own conduct that would be necessary to state a claim under § 1024.41(g).  For example, she does not state when she completed a "complete loss mitigation application," except to allege, in conclusory terms, that she did so "years before, and much more than 37 days before, the scheduled foreclosure sale of her Property."  Prop. Am. Compl. ¶ 66.  This is insufficient. *See Forscht v. Select Portfolio Servicing, Inc*., No. 17-CV-2659, 2018 WL 1757610, at *2 (S.D. Tex. Apr. 12, 2018)

("[W]ithout some factual allegations on when a plaintiff submitted a complete loss mitigation application, a Regulation X claim does not rise beyond a speculative level.").  Plaintiff does allege that she submitted a complete "loan application" on April 14, 2014, *id*. ¶ 65, but does not claim that it was a "complete loss mitigation application," which is the trigger for the dual tracking prohibition, and she does not allege any facts to suggest that such an application was still pending years later (and that none of the exceptions applied) in June 2017, when Chase moved for summary judgment, or in March 2018, when it moved for a final judgment of foreclosure.[30]

Finally, Almazon fails to allege any actual damages proximately caused by Defendant's alleged dual tracking violations.  *See Hill v. DLJ Mortg. Capital, Inc.*, No. 15-CV-3083, 2016 WL 5818540, at *10 (E.D.N.Y. Oct. 5, 2016) ("[A] plaintiff bringing a[n individual] Section 2605 claim must, in addition to showing defendant's failure to comply with the provisions of Section 2605, identify damages that he or she sustained as a result of defendant's alleged violation(s).") (citation omitted), *aff'd*, 689 F. App'x 97 (2d Cir. 2017).  Although 12 U.S.C. § 2605(f)(1)(B) permits a plaintiff to recover up to $2,000 in statutory damages when the lender has engaged in a "pattern or practice" of violations, an individual dual-tracking claim requires a plaintiff to allege and prove "actual damages" that were caused by the improper dual-tracking. 12 U.S.C. § 2605(f)(1)(A); *see also Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291, 2012 WL 1372260, at *5 (E.D.N.Y. Apr. 18, 2012).  To allege actual damages, Plaintiff must plead facts that link her injury to "defendant's alleged RESPA violations—rather than the underlying

---

[30]    Chase reported to the Nassau County Supreme Court on December 12, 2016, that Plaintiff had rejected the final modification option offered by Chase, Aff. in Opp. (Dkt. 8-6 at 150) ¶ 22, thereby satisfying the exception in § 1024.41(g)(2) and permitting Chase to seek a foreclosure judgment. *See also Covin v. FCI Lender Servs. Inc.*, No. 15-CV-0594, 2015 WL 13777210, at *4 (N.D. Ga. June 29, 2015) (citing 12 C.F.R. § 1024.41(a)) ("'[N]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option' or to accept any particular modification application." (quoting 12 C.F.R. § 1024.41)).

failure to pay her mortgage and the potential foreclosure sale." *Ehrenfeld v. Wells Fargo, N.A.*, No. 19-CV-2314, 2019 WL 4933631, at \*5 (E.D.N.Y. Oct. 7, 2019).

Because the dual tracking claim in Plaintiff's proposed Amended Complaint fails to plausibly allege that § 1024.41(g) was triggered, fails to plausibly allege that it was violated, and fails to plausibly allege damages caused by any violation, it would be futile to permit Plaintiff to file that claim.

### b. 42 U.S.C. § 1983

To state a claim under § 1983, a plaintiff must allege that the defendant (1) was acting under color of state law and (2) deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015). To allege that a private actor, such as Chase, was "acting under the color of state law," a plaintiff must allege either joint activity between the private actor and the state or its agents or a conspiracy between the state or its agents and the private actor. *Young v. Suffolk Cty.*, 922 F. Supp. 2d 368, 385 (E.D.N.Y. 2013) (citing *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)).

In her proposed Amended Complaint, Plaintiff alleges that "Defendant violated Plaintiff's due process rights by excluding Plaintiff from her Property[,] by commencing the State Court Action[,] and [by] repeatedly failing to provide her adequate notice and court filings in time to allow her to object and/or properly defend that Action." Prop. Am. Compl. ¶ 100. To the extent this claim arises out of matters previously raised or decided in state court—including Chase's allegedly improper commencement of the Foreclosure Action and its supposed failure to serve Plaintiff with the summary judgment motion papers—it is barred by *res judicata* or collateral estoppel.

More importantly, Almazon "fails to allege facts to establish that [Chase's] relevant conduct may be fairly attributable to the state as required to sustain a § 1983 claim." *Best v. DiTech Holding Corp.*, 407 F. Supp. 3d 210, 211-12 (E.D.N.Y. 2019); *see also Trakansook*, 2007 WL 1160433, at *5 n.4 (allegation that bank was "licensed by government agencies" and that it made "use of the New York State court system" to foreclose plaintiff's mortgage was not sufficient to state a § 1983 claim against it). Plaintiff's argument in sur-reply that Chase has continued to fail to serve Plaintiff after the entry of the foreclosure judgment, even if true, does not support a claim pursuant to § 1983. *See* Sur-Reply Mem. at 5. Accordingly, even if Plaintiff's § 1983 claim were not precluded by the state court Judgment, it would be futile to permit Plaintiff to plead it.

## III.   CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED. To the extent Plaintiff's claims seek declaratory relief, they are dismissed pursuant to Rule 12(b)(1). To the extent they seek monetary relief, they are dismissed, with prejudice, pursuant to Rule 12(b)(6). Leave to amend is denied as futile.

The Clerk of Court is respectfully directed to terminate all pending motions and deadlines and close the case. The Clerk is further requested to mail a copy of this Order to Ms. Almazon and to note mailing on the docket.

**SO ORDERED.**

Date:  March 9, 2020
New York, New York

_____
**VALERIE CAPRONI**
**United States District Judge**